closed by the statute. Aside from the provision of the statute relative to adjournments, there is authority for holding that the assessors at that time, upon application, would have had jurisdiction to correct the assessment in the absence of a statutory prohibition to the contrary. People v. Supervisors of Westchester, 15 Barb. 607, 614. And further, if the notice fixed August 18th as the first day, then the petitioner, aside from any question of statutory assurance, in view of the provisions of section 36, supra, and of the absence of specific day designated by statute, was lulled to sleep by the form of the notice. The facts are much more in its favor than those which moved the court in People ex rel. Buffalo, etc., R. Co. v. Duguid, supra.

The order should be reversed, with $10 costs and disbursements. All concur.

---

## LINTON v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. March 4, 1904.)

1. ATLANTIC AVENUE IMPROVEMENT — COMMISSION—COMPENSATION—PRIMARY LIABILITY OF RAILROAD.

Laws 1897, p. 763, c. 499, relative to the improvement of Atlantic avenue in the city of Brooklyn, provides for the removal from the avenue of a steam railroad, that the cost of construction shall be borne by the railroad corporations and the city, and that the work shall be done under the direction of a board appointed by the mayor. Section 4 provides that the board shall file a monthly statement of its expenditure with the comptroller, and 'shall be paid from the funds provided for the expenses of the improvement. Section 5 declares that the board shall prepare a statement showing the expense of the improvement, which expense shall be paid by the railroad companies and the city, and that, as often as the board shall certify that $25,000 has been expended by either of the railroads, specifying the portions and division of the improvement where the expenditure has been made, the comptroller shall draw his warrant in favor of the railroad for one-half the sum on account of the one-half of the expense to be borne by the city. *Held*, that the act does not create a liability for the commissioners' compensation enforceable directly against the railroad company, and hence a commissioner cannot recover against a railroad company in the absence of any showing that his claim has ever been passed upon by the board.

Appeal from Trial Term, Kings County.

Action by Edward F. Linton against the Long Island Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

R. Percy Chittenden (Frank Harvey Field, on brief), for appellant. Geo. W. Wingate (William J. Kelly, on brief), for respondent.

HIRSCHBERG, P. J. The question on appeal is, in effect, whether the complaint contains the statement of a cause of action against the defendant. The action is brought against the Long Island Railroad Company as sole defendant to recover the sum of $11,260, with interest from July 1, 1901, as fees of the plaintiff as commissioner and secretary of the board for the Atlantic avenue improvement, claimed

to have been earned between May 28, 1897, and June 1, 1901. The services were rendered and the liability incurred, if at all, under the terms and provisions of chapter 499, p. 763, of the Laws of 1897, which is an act to regulate and improve Atlantic avenue between Flatbush and Atkins avenues, in the city of Brooklyn, providing for the removal from the surface of Atlantic avenue of the defendant's steam railroad, leased by it from the Atlantic Avenue Railroad Company of Brooklyn, and also providing means for the payment of the expenses to be incurred in the changes of grade of the avenues and railroad contemplated by the act. The complaint alleges that the lessor company, the Atlantic Avenue Railroad Company, having no present interest in the improvement, did not unite with the lessee, the defendant, in making the same; that the plaintiff, as a member of the board created by the act, and as its secretary, was continuously employed in the work of the improvement for 1,224 days at the rate of compensation fixed in the act, viz., $10 per day; and that the sum which he seeks to recover from the defendant is the unpaid balance of such compensation.

The complaint further alleges that the defendant promised and agreed to pay and advance such sums of money as should be necessary for the improvement, and promised and agreed to pay to the plaintiff the compensation 'which he should be entitled to as such commissioner; but no such claim was advanced upon the trial or upon this appeal. The question presented before the learned trial justice, and on the argument and in the brief of the learned counsel for the appellant in this court, is whether under the act in question the defendant is solely liable to the plaintiff in the first instance for services which may be rendered by him as commissioner, to recover for which services an action at law may be maintained, without the claim being first considered, sanctioned, or rejected by the board; or, in other words, to quote the language of the brief presented on the appellant's behalf, "the question to be answered by this court is, what is the true interpretation of this act"? The act provides for an extensive public improvement, the expense of which is to be borne equally by the city on the one hand, and by the defendant and its lessor on the other, with these qualifications: that the cost of construction of stations, sidings, and other railroad betterments is to be borne by the railroad corporations alone, and shall not be included in the estimates of the cost of the proposed improvement; and that in no event shall the proportion of the cost of the improvement to be borne by the city exceed the sum of $1,250,000, but any amount in excess thereof shall be paid by the railroad companies. The act further provides that all the work of the improvement shall be done under the approval, direction, and sanction of a board, whose duty it shall be to direct and superintend the construction of the improvement by the railroad companies, and which board shall be called the "Board for the Atlantic Avenue Improvement." It is to consist of seven members, one of whom shall be a practical civil engineer. The members of the board are to be appointed by the mayor of the city, the appointments to be filed in the office of the city clerk; and they are required, before entering upon the performance of their duties, to

severally take and subscribe an oath of office, to be likewise filed in the city clerk's office.  It is further provided that the board shall act upon any and all questions by a majority vote of its members. By section 4 (page 767) of the act it is further provided as follows:

"It shall be the duty of the said board to file a monthly statement, under oath, of the items of its expenditures, with the comptroller of the city of Brooklyn.  Regular accounts of all its transactions shall be kept by the board, which shall be open to the inspection of the officers of the said railroad companies and to the comptroller and the commissioners of city works of the city of Brooklyn.  The said board is authorized to pass suitable by-laws for its own regulation and government, and to select a presiding officer and secretary from its number, and to employ clerical and other necessary assistants in the performance of their duties, and to fix the compensation of such assistants.  It shall keep a record of all its proceedings.  *  *  *  The said board are hereby authorized and directed to take the entire charge and control of the said improvement, and to direct and superintend the construction of the same, in conformity with the provisions of this act, in a substantial and workmanlike manner.  Each member of the board shall receive ten dollars for every day that he shall be employed in the performance of his duties under this act, and the compensation of said commissioners and of any clerical or other assistants employed by them shall be paid from the funds provided for the expenses of said improvement.  They may appoint a general superintendent of the works, who may be one of their number.  The said board shall prepare plans and specifications, and an estimate of the cost of the work of said improvement, in conformity with this act, which, when approved by the commissioner of city works, shall be filed in the office of the comptroller of the city of Brooklyn, and a duplicate thereof in the office of the said commissioner of city works of said city."

By section 5 (page 768) it is provided that when such plan, specification, and estimate shall have been made and filed the board shall prepare a statement showing the items of the expense and cost of the improvement, and what is to be deemed properly included therein, which expense and cost shall be paid by the railroad companies and the city in the proportions which I have stated.  The board is also required, before the work is commenced, to file a statement showing the division of the cost as made between the railroad corporations and the city.  Section 5 further provides as follows:

"When and as often as it shall appear by the certificate of the superintending engineer of the work of the said improvement, duly certified by the aforesaid board, that the sum of twenty-five thousand dollars has been expended thereon by either of said railroad companies, specifying the portions and division of the said improvement where said expenditure has been made, the comptroller of the said city shall draw his warrant upon the treasury of the said city, in favor of the treasurer of the railroad company, bearing and paying said expense, for one-half the said sum, which shall be duly signed and countersigned by the proper officers of said city, upon whom there is devolved the duty of signing and countersigning warrants, and deliver it to the said railroad company for and on account of the one-half of the expense and cost of the said improvement to be borne and paid by the city as aforesaid."

By section 6 (page 769) it is provided that:

"For the purpose of raising the sum or amount of the cost of said improvement to be borne and paid by the said city, it shall be the duty of the mayor and comptroller or other proper officers thereof, from time to time, upon the requisition of said board of improvement to issue bonds of said city not exceeding the amount above specified bearing such rates of interest as they may deem proper, which interest shall be payable semi-annually, which bonds shall be issued as are other city bonds and the proceeds of which shall be used for

the purpose of paying the one-half part of all amounts called for by the certificate of the superintending engineer approved by said board and provided for in the preceding section of this act."

By section 7 (page 769) it is provided that:

"The proceeds of the sale of said Atlantic avenue improvement bonds so sold, as provided for in the preceding section, shall be set apart, when collected, as a trust fund, for the purposes of said improvement, and for paying the portion of the cost thereof hereinabove imposed upon said city."

Sections 6 and 7 of the act were amended by chapter 452, p. 1095, of the Laws of 1902, so as to provide for the raising of the "trust fund" by the issue of corporate stock of the city of New York, instead of by means of the bonds of the city of Brooklyn, but no other change was made having any bearing on the question under consideration. The complaint contains no allegation that any plan, specification, or estimate was ever made and filed by the board which included the compensation of the commissioners as a proper item of the expense and cost of the improvement, nor is there any allegation that the plaintiff's claim has ever been audited, sanctioned, adjusted, or passed upon by the board in any way; the theory of the plaintiff being that the act itself creates a liability enforceable at law against the railroad companies in favor of each commissioner individually for the sum of $10 for each day of his actual employment. The act certainly gives no such right of action in express terms. Assuming that the compensation of the members of the board is a part of the cost of the improvement, the liabilities of the railroad companies to pay it would be included in the general provisions of the act by which they are directed and required to make the change of grade, and which contemplate that they shall bear the burden of expenditure in the first instance. I have no doubt that such compensation is intended by the act to be included within the cost of the work which is to be ultimately divided equally between the railroad companies and the city, and that the reference in section 4 of the act to the "funds provided for the expenses of said improvement" relates not only to the "trust fund" to be raised in order to defray the city's one half, but also to the general obligation imposed upon the defendant to pay the other half. The "trust fund" is expressly limited to an amount which shall equal one-half of the sum expended by the defendant from time to time, and no dollar of it could ever be used in the payment of commissioners' compensation except by way of reimbursement to the defendant. It by no means follows, however, that at the end of each day's employment each of the seven commissioners could bring and maintain an action at law against the defendant to recover his day's compensation, and a construction of the act which permits such a result should certainly be avoided. Whatever rights and claims the plaintiff has he has as a member of the board, which, as a whole, has the charge and superintendence of the work, and which as a whole is to certify under the terms of the act to all expenditures made by the defendant. Assuming that he may have an individual action at all, I am inclined to the view adopted by the learned trial justice that he must first allege that his claim has been passed upon by way of audit, approval, or other form of sanc-

tion by the board, so that the defendant, when called upon to pay, may know that the services have been rendered and the liability created in accordance with the by-laws adopted by the board for its regulation and government, and that the expenditure, if made, will be certified by that body as legitimate and proper.  If the claim is a just one; there can be no insuperable legal obstacles in the way of its provisional adjustment so as to constitute it a valid claim against the funds provided for the expenses of the improvement, but it is only reasonable that such adjustment should be required as a preliminary step in its enforcement in accordance with the general practice in the collection of the claims of public officers for their compensation.  The judgment should be affirmed.

Judgment affirmed, with costs.  All concur, except JENKS, J., not voting.